PEOPLE v CONNOR

Docket No. 162560. Submitted February 9, 1995, at Lansing. Decided
March 20, 1995, at 9:55 A.M. Leave to appeal sought.

Curtis Conner was charged in the Oakland Circuit Court with
prison escape and with being a second-offense habitual offender.
The court, Fred M. Mester, J., quashed the habitual offender
information, ruling that trial on that information would violate
the 180-day rule, MCL 780.131; MSA 28.969(1). The defendant
thereafter pleaded no contest to the charge of prison escape
and received a sentence of 518 days' imprisonment, with 518
days' credit for time served while awaiting trial. The prosecu-
tion appealed.

The Court of Appeals *held:*

1. The trial court erred in ruling that the habitual offender
information was subject to the 180-day rule. MCL 780.131; MSA
28.969(1), as amended by 1988 PA 400, effective March 30,
1989, provides that the 180-day rule does not apply to a
charged criminal offense committed by an inmate of a state
correctional facility while incarcerated in the correctional facil-
ity or an offense committed by an inmate of a state correctional
facility after the inmate has escaped from the correctional
facility and before the inmate has been returned to the custody
of the Department of Corrections. Treating habitual offender
status as a criminal offense for purposes of the 180-day rule,
this offense, like prison escape, was committed by the defen-
dant while he was imprisoned. Therefore, the 180-day rule does
not apply to the habitual offender information in this case.

2. The trial court erred in sentencing the defendant to time
served. MCL 750.193; MSA 28.390 requires that a sentence for
prison escape must be consecutive to the sentence or sentences
being served before the escape. Where a consecutive sentence is
imposed, a defendant is not entitled to credit under MCL

REFERENCES

Am Jur 2d, Criminal Law § 852; Escape, Prison Breaking, and
Rescue §§ 18, 20.

Right to credit for time spent in custody prior to trial or sentence.
77 ALR3d 182.

769.11b; MSA 28.1083(2) for time served that the defendant already was required to serve under a prior sentence.

Reversed and remanded for reinstatement of habitual offender information and to provide the defendant with opportunity to withdraw the plea of no contest.

1. CRIMINAL LAW — 180-DAY RULE — PRISON ESCAPE — HABITUAL OFFENDERS.

The 180-day rule, which provides that a state prison inmate must be brought to trial on an untried warrant, indictment, information, or complaint within 180 days after the Department of Corrections provides the prosecuting attorney with written notice of the inmate's place of imprisonment, does not apply to a charge of prison escape and an accompanying charge of being an habitual offender (MCL 780.131, 750.193, 769.10; MSA 28.969[1], 28.390, 28.1082).

2. SENTENCES — CONSECUTIVE SENTENCING — PRISON ESCAPE.

A sentence for a conviction of prison escape must be imposed to run consecutively to the sentence or sentences being served before the escape and may not provide for credit for time served before sentencing for prison escape (MCL 750.193, 769.11b; MSA 28.390, 28.1083[2]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Janice A. Kabodian,* Assistant Prosecuting Attorney, for the people.

*Michael L. Steinberg,* for the defendant.

Before: FITZGERALD, P.J., and TAYLOR and MARKMAN, JJ.

MARKMAN, J. The prosecution appeals the circuit court's order quashing an information under the so-called second-felony (or habitual offender) statute, MCL 769.10; MSA 28.1082, and awarding defendant credit for time served on a conviction of prison escape, MCL 750.193; MSA 28.390. We reverse and remand.

In 1983, defendant was sentenced to ten to twenty years in prison for second-degree murder,

MCL 750.317; MSA 28.549 and the mandatory consecutive two-year prison term for possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On September 8, 1988, while serving his sentence, he escaped. At the time, he was an inmate at Camp Pontiac and on work assignment at the Michigan State Fairgrounds. Defendant was not apprehended until June 10, 1991. Defendant initially waived the preliminary examination. On October 28, 1991, defendant was arraigned in the Oakland Circuit Court on charges of prison escape and being a second-felony offender.

A pretrial conference was held on June 1, 1992, and at that time, the second attorney appointed to this matter withdrew as defense counsel. New counsel appeared at the June 15, 1992, pretrial conference and requested a remand to the district court for a preliminary examination. That motion was granted, and the preliminary examination was conducted on October 14, 1992. At the conclusion of the examination, defendant was bound over for trial.

Defendant was then arraigned in the circuit court on November 2, 1992. A pretrial conference was held on November 30, 1992, and trial was scheduled for February 12, 1993. On the date scheduled for trial, the court granted defendant's motion to quash the habitual offender information. The court found that the 180-day rule, MCL 780.131; MSA 28.969(1), applied to the habitual offender information, and that the defendant had not been brought to trial within the 180-day period.

Thereafter, defendant pleaded no contest to the remaining charge of prison escape. The prosecutor objected to the trial court accepting a no-contest plea. During the plea-taking procedure, the follow-

ing exchange occurred between the trial court and defendant:

> *The Court*: Do you acknowledge and agree that the only promise that this Court has made to˙ you in regards to a *Killibrew* [*People v Killebrew,* 416 Mich 189; 330 NW2d 834 (1982)] plea, would be that I would, assuming the presentence report is appropriate, would give you time served?
>
> *The Defendant*: Yes, sir.
>
> *The Court*: Now, in the event that the presentence report comes back and suggests that another sentence should be given, where I will have to keep you in jail, keep you in prison, then I would entertain a motion by your attorney to withdraw the plea. Do you understand that?
>
> *The Defendant*: Yes, sir.

There is no dispute that defendant waited 518 days for the charge of prison escape to come to trial. On March 2, 1993, defendant was sentenced to 518 days' imprisonment with credit for the 518 days served. Defendant was then returned to the custody of the Department of Corrections to continue his original ten- to twenty-year sentence.

The prosecution argues that the 180-day rule does not apply to the habitual offender information. The defendant contends, however, that the prosecution failed to object to the relief sought in the motion to quash the habitual offender information. As a general rule, issues not raised before and considered by the trial court are not properly preserved for appellate review. *People v Grant,* 445 Mich 535, 546; 520 NW2d 123 (1994); *People v Stacy,* 193 Mich App 19, 28; 484 NW2d 675 (1992). However, this issue was addressed and decided by the trial court. More specifically, the court found as follows:

> Ladies and gentlemen, the case before me at the

present time offers up an issue that is unique at first impression in the State of Michigan as to whether or not the 180 day responsibility to bring an individual before the Court comes under—comes within the ambit of the habitual offender statute.

The Court is satisfied, after reviewing Michigan law that really doesn't give too much help in that regard, is satisfied that in order to comport with the spirit of the 180-day rule that, indeed, the habitual offender rule must come under it. And, therefore, the Court will grant the motion and quash the [i]nformation as to the habitual offender.

Whether the 180-day rule applies to habitual offender informations is a question of law. We review questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

The 180-day rule was amended by 1988 PA 400[1]

---

[1] MCL 780.131; MSA 28.969(1), as amended by 1988 PA 400, provides in pertinent part:

> (1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. . . .
>
> (2) This section does not apply to a warrant, indictment, information, or complaint arising from either of the following:
>
> (a) A criminal offense committed by an inmate of a state correctional facility while incarcerated in the correctional facility.
>
> (b) A criminal offense committed by an inmate of a state correctional facility after the inmate has escaped from the correctional facility and before he or she has been returned to the custody of the department of corrections.

to provide that the rule does not apply to a charged criminal offense committed by an inmate while incarcerated in a correctional facility, or committed after the inmate has escaped from a facility and before the inmate has been returned to the custody of the Department of Corrections. MCL 780.131; MSA 28.969(1); *People v Smith,* 438 Mich 715, 718; 475 NW2d 333 (1991) (lead opinion of Justice LEVIN). The amended version of the statute became effective on March 30, 1989. MCL 780.131; MSA 28.969(1); *People v Corlew,* 186 Mich App 320, 323; 463 NW2d 243 (1990). Both parties cite and treat as applicable the amended version of the statute in their appellate briefs. Although the instant prison escape occurred on September 8, 1988, we agree that the amended statute should be applied. *Corlew, supra.* In *Corlew,* this Court held that "the amended version of MCL 780.131; MSA 28.969(1) applies to any case which arose on or after March 30, 1989, the effective date of the amendment, and to those cases pending on March 30, 1989, over which the trial court had not yet lost jurisdiction under the preamendment provisions of the 180-day rule." *Id.* at 323. In this case, the defendant was not apprehended until 1991. Thus, the case arose after the amendment took effect on March 30, 1989. Accordingly, the amended version of the statute applies.

MCR 6.004(D),[2] which became effective on Octo-

---

[2] MCR 6.004(D) provides:

(1) Except for crimes exempted by MCL 780.131(2); MSA 28.969(1)(2), the prosecutor must make a good-faith effort to bring a criminal charge to trial within 180 days of either of the following:

(a) the time from which the prosecutor knows that the person charged with the offense is incarcerated in a state prison or is detained in a local facility awaiting incarceration in a state prison, or

(b) the time from which the Department of Corrections knows

ber 1, 1989, is a modification of the Supreme Court's earlier construction of the statute. *People v Taylor,* 199 Mich App 549, 553; 502 NW2d 348 (1993). It is not in conflict, however, with the statutory 180-day rule. *Id.*

The purpose of the 180-day rule is to give an inmate the opportunity to have sentences run concurrently. *People v McCullum,* 201 Mich App 463, 465; 507 NW2d 3 (1993); *People v Smith, supra* at 718. This Court previously held that the 180-day rule did not apply to habitual offender informations for the reason that habitual offender status is a sentencing enhancement condition rather than a separate criminal offense. *People v Holbrook,* 60 Mich App 628; 231 NW2d 469 (1975); *People v Ungurean,* 51 Mich App 262; 214 NW2d 873 (1974).

*Holbrook* and *Ungurean* were subsequently criticized, however, in light of subsequent developments regarding habitual offender proceedings, and the 180-day rule was held applicable. In *Peo-*

---

or has reason to know that a criminal charge is pending against a defendant incarcerated in a state prison or detained in a local facility awaiting incarceration in a state prison.

For purposes of this subrule, a person is charged with a criminal offense if a warrant, complaint, or indictment has been issued against the person.

(2) In cases covered by subrule (1)(a), the defendant is entitled to have the charge dismissed with prejudice if the prosecutor fails to make a good-faith effort to bring the charge to trial within the 180-day period. When, in cases covered by subrule (1)(b), the prosecutor's failure to bring the charge to trial is attributable to lack of notice from the Department of Corrections, the defendant is entitled to sentence credit for the period of delay. Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice.

Despite our decision to apply the amended statute, the issue presented in this case does not necessitate a decision concerning whether the court rule, which became effective after the defendant's escape but before his apprehension, should be applied.

*ple v Leroy,* 157 Mich App 334, 341-342; 403 NW2d 555 (1987), this Court found:

> The question . . . is not simply whether a separate criminal offense has been charged, but rather whether our procedural rules, statutes and safeguards will be withheld. The procedures established for trying a defendant on an habitual offender information are remarkably similar to those used in a trial for a criminal offense. . . .
>
> . . . The statute does not call being an habitual offender a felony or misdemeanor, but we treat it exactly as if it were, except that the sentence imposed depends on the underlying offense.

The panel found that "the purpose of the 180-day rule is to dispose of untried warrants, indictments, *informations* or complaints against inmates of penal institutions of this state." (Emphasis in original.) *Id.* at 343, citing *People v Woodruff,* 414 Mich 130; 323 NW2d 923 (1982). The panel further noted that "[t]his purpose would not be served by allowing supplemental informations to stand untried indefinitely." *Leroy, supra* at 343-344.

The habitual offender statute does not create a substantive crime that is separate from and independent of the principal charge. *People v Bewersdorf,* 438 Mich 55, 67; 475 NW2d 231 (1991). However, even if we accept as in *Leroy* that a defendant will not be denied the protections afforded by the 180-day rule solely because the defendant is charged with being an habitual offender, this alone does not mandate application of the 180-day rule to habitual offender informations. We must continue the analysis to determine if the habitual offender information is properly excepted from the rule.

In *Smith, supra,* a plurality opinion, Justices LEVIN, GRIFFIN, MALLETT, BOYLE, and RILEY agreed

that the 180-day rule did not apply to a charge of prison escape, which offense required a consecutive sentence. Justice LEVIN, writing the lead opinion, adopted the view expressed in *People v Loney,* 12 Mich App 288, 292; 162 NW2d 832 (1968):

> The purpose of the statute is clear. It was intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences. This purpose, however, does not apply in the instance of a *new* offense committed *after* imprisonment, nor where the statute, as in the case of an escape or attempted escape, sets up a mandatory consecutive sentence. The legislature was not concerning itself with the need for dispatch in the handling of a charge brought against an inmate for offenses committed *while* in prison. [Emphasis in original.] *Smith, supra* at 718.

Justice LEVIN additionally noted that the 180-day rule had been amended by 1988 PA 400 to provide that the rule does not apply to a charged criminal offense committed by an inmate while incarcerated in a correctional facility, or committed after the inmate has escaped from a facility and before the inmate has been returned to the custody of the Department of Corrections. *Id.* at 718. In *Corlew, supra,* this Court, applying the amended statute, similarly found the 180-day rule inapplicable to the crime of prison escape.

If we accept that being an habitual offender is a criminal offense for purposes of applying the 180-day rule, this offense, like prison escape, was committed by the defendant while he was imprisoned. He had not yet committed the underlying crime of prison escape before being imprisoned. Therefore, before being imprisoned, he could not have been an habitual offender. Consistent with a

plain reading of the statute that excludes an information arising from a criminal offense committed by an inmate while incarcerated in a state correctional facility, the 180-day rule would not apply.

The defendant is also subject to a mandatory consecutive sentence for being an habitual offender. Pursuant to MCL 750.193; MSA 28.390, the sentence for prison escape must be served consecutively to the sentence or sentences then being served. The habitual offender proceeding serves to punish the defendant for his prior offenses by enhancing the sentence on the principal charge. *People v Oswald (After Remand),* 188 Mich App 1, 12; 469 NW2d 306 (1991). Thus, even if being an habitual offender is a separate criminal offense under the 180-day rule, the "sentence" imposed for the habitual offender "offense" is, by virtue of an enhancement of the sentence for prison escape, merely a continuation of an already mandatorily consecutive sentence. There is no threat that the defendant under these circumstances would be denied the right to serve sentences concurrently. The sentence for being an habitual offender cannot be served concurrently with either the prison escape sentence or the sentence being served by the defendant when he escaped. While the defendant argues that the court has discretion in sentencing under the habitual offender statute,[3] the very na-

---

[3] The second-felony or habitual offender statute, MCL 769.10; MSA 28.1082, provides in part:

> If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court, except as otherwise provided in this section or in section 1 of chapter 11 [involving probation and delayed-sentencing orders], may place the person on probation or sentence the person to imprisonment for a maximum term which is not more than 1½ times the longest term prescribed for a first conviction of that offense or for a lesser term.

ture of the sentence, if imposed, is an enhancement of the sentence for the underlying offense, which in this case requires a consecutive sentence.

This Court recognizes the need to dispose of untried charges and the 180-day rule's facilitation of that result as explained in *Leroy*. Consistent with *Smith*, however, the purpose of the statute does not apply in a case where a mandatory consecutive sentence is required upon conviction. *McCullum, supra* at 465. Thus, both the plain meaning and the purpose of the 180-day rule lead to the conclusion that the rule does not apply to an habitual offender information where the underlying charge is prison escape. Accordingly, the trial court erred in quashing the information.

The prosecution further argues that the trial court erred in awarding defendant 518 days credit for time served and in failing to impose a consecutive sentence for the conviction of prison escape. The defendant contends, however, that the prosecutor is estopped from challenging the defendant's sentence. The defendant claims that his plea was based on the trial court's representations, and that the prosecutor, having failed to object to the terms of the plea agreement and sentencing, acquiesced to the terms of the agreement.

The record reflects that on February 12, 1993, the prosecutor objected to the no-contest plea entered by the defendant. The court subsequently noted on the record that, with respect to the plea, if the presentence report was appropriate, the court would grant time served. On March 3, 1993, the defendant reminded the court of the agreement:

---

Because the language is permissive, not mandatory, it fixes only the upper boundaries of the court's sentencing discretion. *People v Bewersdorf, supra* at 66.

> *The Defendant*: Your Honor, we had an agreement with this Court. If the presentence report was sufficient for the Court to make the type of ruling for sentencing, that there would be time served in this matter. If Your Honor remembers, it was . . .
>
> *The Court*: (Interposing) That is correct. That was the agreement placed on the record over the strenuous objection of the Prosecutor at that time.

The issue of the legality of granting credit for time served was not raised or addressed by the trial court. However, the court found that the prosecutor objected to the agreement. Unlike the cases cited by the defendant in support of his position, the prosecution did not expressly agree to the terms of the plea agreement or agree to refrain from taking a position on sentencing. Moreover, the prosecution questions whether the trial court had any legal authority for granting the credit for time served. Under these circumstances, the prosecution will not be held to have acquiesced to and be bound by the terms of the plea agreement.

The defendant further argues that the prosecutor had a duty to inform the court of the consecutive sentencing under MCL 771.14(2)(e); MSA 28.1144(2)(e) and, because of his failure to so inform the court, the prosecutor is bound by the sentencing agreement. Defendant cites no authority in support of this position except "fundamental notions of fairness and justice" and merely reiterates part of the general argument set forth in support of holding the prosecution bound to the plea agreement. We decline to consider this issue in light of such cursory treatment with little or no supporting authority. *Goolsby v Detroit,* 419 Mich 651, 655, n 1; 358 NW2d 856 (1984); *Community Nat'l Bank of Pontiac v Michigan Basic Property*

*Ins Ass'n,* 159 Mich App 510, 520-521; 407 NW2d 31 (1987).

Although the prosecutor has not acquiesced to the agreement, this does not answer the question whether the sentencing issue posed by the prosecution was properly preserved for appellate review. Because this issue was not raised before and considered by the trial court, it is not properly preserved for appellate review. *Grant, supra; Stacy, supra.* However, to the extent that this issue is relevant to the fundamental legal authority of the trial court to grant the credit for time served, we will grant review.

The sentence credit statute, MCL 769.11b; MSA 28.1083(2), provides as follows:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

This statute is to be read to benefit defendants unless to do so would frustrate the intent of a consecutive sentencing statute. *Brinson v Genesee Circuit Judge,* 403 Mich 676, 686; 272 NW2d 513 (1978); *People v Turner,* 130 Mich App 646, 649; 344 NW2d 34 (1983). Where a consecutive sentence is imposed, a defendant is not entitled to credit for presentence time served that he was already obliged to serve under a prior sentence. *People v Patterson,* 392 Mich 83, 90; 219 NW2d 31 (1974); *Turner, supra* at 649. Thus, there is generally no credit for presentence time served against a prison escape sentence, because such a sentence must be consecutive, MCL 750.193; MSA 28.390, and the

defendant was already obliged to serve that time under his uncompleted sentence for the earlier conviction. *Turner, supra* at 650; *People v Andrews #2,* 52 Mich App 728; 218 NW2d 383 (1974); *People v Bachman,* 50 Mich App 682; 213 NW2d 800 (1973).

As noted above, under Michigan law, the sentence for prison escape is mandatorily consecutive to the sentence being served at the time of the escape. Therefore, the defendant is required to serve any sentence for prison escape consecutively to the sentence he was serving at the time he escaped. He was already obliged to serve the 518 days' imprisonment under his uncompleted sentence for the earlier conviction. Accordingly, he was not entitled to credit for the time served in prison awaiting trial on the charge of prison escape.

We do agree with defendant, however, that this matter should be remanded to the trial court to permit the defendant the opportunity to withdraw his plea, which was given in exchange for the trial court's promise to impose a sentence for "time served." *People v Cobbs,* 443 Mich 276, 283; 505 NW2d 208 (1993). If defendant declines to withdraw his plea, sentencing should be imposed consistent with this opinion.

Reversed and remanded for reinstatement of the habitual offender information and to provide the defendant with an opportunity to withdraw his plea of no contest.